COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1  **Michael A. Slawson**
   Represented *Pro Se*
2  Email: ***michaelslawsonlawsuit@gmail.com***
   A citizen and resident of the State of California
3  *In Pursuit of Liberty and Justice*
   Mailing Address: 5 Broken Bow Ln.,
4  Rolling Hills Estates, CA 90274-2401
   **Telephone: (310) 648-0464**
5  Mail by Certified Mail Only

6

7

8

9              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
10                   WESTERN DIVISION

11  MICHAEL A. SLAWSON,              )  Docket No. CV 20-1356-JVS-GJS
    an individual, represented *pro se*,  )
12              Plaintiff,           )  **COMPLAINT FOR**
                                     )  **COMPENSATORY, INJUNCTIVE,**
13          v.                       )  **AND DECLARATORY RELIEF**
                                     )
14  COUNTY OF LOS ANGELES, a         )  **42 U.S.C. § 1983,**
    public entity; LOS ANGELES       )  **DEPRIVATION OF CIVIL**
15  COUNTY SHERIFF'S                 )  **RIGHTS;**
    DEPARTMENT, a public entity;     )  **42 U.S.C. § 1985(2),(3)**
16  CULVER CITY POLICE               )  **CONSPIRACY TO INTERFERE**
    DEPARTMENT, a public entity; CITY )  **WITH CIVIL RIGHTS**
17  OF CULVER CITY, a public entity; )
    HARBOR-UCLA MEDICAL              )  **DEMAND FOR JURY TRIAL**
18  CENTER, a public entity; LOS     )
    ANGELES COUNTY DEPARTMENT        )
19  OF MENTAL HEALTH, a public       )
    entity; DEREK SCHARLIN,          )
20  individually and as a Police Officer of )
    the Culver City Police Department; )

                    1

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1  LAMONT DOBBINS, individually
   and as a Deputy Sheriff of the Los       )
2  Angeles County Sheriff's Department;  )
   CINDY SELANDER, individually and  )
3  as a Deputy Sheriff of the Los Angeles  )
   County Sheriff's Department; MARK   )
4  RIDLEY-THOMAS, individually and   )
   as a member of the Los Angeles          )
5  County Board of Supervisors; EMILY   )
   PIK LAM NG, individually and as a       )
6  Doctor of Harbor-UCLA Medical          )
   Center; ERIC ARIMOTO, individually  )
7  and as a Clinician of the Los Angeles    )
   County Department of Mental Health;   )
8              Defendants,                              )
   _____)

9

## **TABLE OF CONTENTS**

10                                                                    *Page*

11  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

12      STATEMENT OF CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

13      SUMMARY OF EVENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

14  JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

15  VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

16  PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

17  INCORPORATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

18  FIRST CAUSE OF ACTION
       *Unlawful Seizure and False Imprisonment* . . . . . . . . . . . . . . . . . . . . . . . .    25
19
    SECOND CAUSE OF ACTION
20     *Retaliation and Conspiracy to Falsely Arrest* . . . . . . . . . . . . . . . . . . . . . . .    28

2

THIRD CAUSE OF ACTION
    *Deprivation of Second Amendment Rights* . . . . . . . . . . . . . . . . . . . . . . . .   33

FOURTH CAUSE OF ACTION
    *Defamation Intended to Deprive of Civil Rights* . . . . . . . . . . . . . . . . . .   36

FIFTH CAUSE OF ACTION
    *Additional Violations of Plaintiff's Civil Rights Caused by Acts of
    Defendants* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   41

SIXTH CAUSE OF ACTION
    *Violation of Bodily Integrity, Oppression of the Mind, and Forced
    Medication* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   43

SEVENTH CAUSE OF ACTION
    *Restrictions of Liberty by Bodily Restraints and Unlawful Use of Force* .   46

EIGHTH CAUSE OF ACTION
    *Harassment, Stalking, and Malicious Prosecution* . . . . . . . . . . . . . . . . . .   48

NINTH CAUSE OF ACTION
    *Obstruction of Justice, Defamation, Retaliation and Cover Charges* . .   51

DAMAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   60

PRAYER FOR RELIEF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   63

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

# **INTRODUCTION**

### **Statement of Case**

1. This is a civil rights action brought under 42 U.S.C. §§ 1983 and 1985(2),(3) against the COUNTY OF LOS ANGELES; the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, [hereinafter "LASD"]; the CULVER CITY POLICE DEPARTMENT; the CITY OF CULVER CITY; HARBOR-UCLA MEDICAL CENTER; the LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH; MARK RIDLEY-THOMAS, a member of the Los Angeles County Board of Supervisors for the 2nd District; LAMONT DOBBINS and CINDY SELANDER, Deputy Sheriffs of LASD; DEREK SCHARLIN, a Police Officer (detective) of the CULVER CITY POLICE DEPARTMENT; the LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH; ERIC ARIMOTO, a mental health Clinician with the LOS ANGELES COUNTY DEPARTMENT OF MENTAL HEALTH; and EMILY PIK LAM NG, a medical doctor at HARBOR-UCLA MEDICAL CENTER. All individuals are sued individually and in their official capacities.

2. The defendants, acting under color of law, without legal justification, and resulting from the policies and customs of their employing governmental entities and them, seized and took into custody Plaintiff MICHAEL A. SLAWSON , who

1  was at the time a 29 year old man who did not have a mental illness or display

2  behavior of a mental illness, confined him in a psychiatric hospital where he was

3  subjected to cruel and inhumane treatment, was provoked and physically restrained

4  in a highly traumatic, physically and mentally damaging restraint procedure and

5  was involuntarily imprisoned and involuntarily medicated for a nine day period,

6  deprived him of his right to possess or own firearms for life, defamed him and

7  deprived him of due process to defend the false and malicious attacks on his

8  mental health and autonomy over one's own body and person.

9       3. The defendants used their authorities to oppress the plaintiff by bringing

10  frivolous and malicious legal actions against him, depriving him of constitutionally

11  protected rights. This complaint brings violations and infringements of plaintiff's

12  First, Second, Fourth, Sixth and Fourteenth Amendment rights, and shows that the

13  acts of the defendants constitute legal remedy through 42 U.S.C. §§ 1983 and 1985

14  (2),(3), [*Civil action for deprivation of rights*], and [*Conspiracy to Interfere with*

15  *Civil Rights*, *(2)Obstructing Justice*, and *(3)Depriving persons of rights and*

16  *privileges*].

17       4. The defendants have established, through policy, inadequate and flawed

18  training, practice, and customs relating to the ambiguous and vague topic of

19  'mental health' and a tendency to act in flagrant violation of *fourth amendment*

20  rights (United States Constitution) by using mental health detainments,

1  circumventing reasonable suspicion, probable cause and warrant requirements for

2  arrests or detainments. The Los Angeles County Sheriff Civilian Oversight

3  Commission, responsible for oversight and policy contributions to LASD, has

4  established programs to increase the influence of LASD MET (Mental Evaluation

5  Teams) to deter what they consider potential criminal suspects or potential threats,

6  including in 2017:

7  *'increasing the number of MET teams from 23 to 60, prioritizing a*

8  *department-wide de-escalation training with a mental health focus,*

9  *promoting inter-agency collaboration with other mental health partners and*

10  *stakeholders, and treating MET and mental health-focused de-escalation*

11  *training equally and complementary to the strategies reducing uses of force*

12  *and promoting constitutional policy'.*

13  5. LASD and COUNTY OF LOS ANGELES, working in an inter-agency

14  relationship with CULVER CITY POLICE DEPARTMENT, CITY OF CULVER

15  CITY, and HARBOR-UCLA MEDICAL CENTER, have shown a propensity and

16  pattern of applying these policies and standards into action, resulting in

17  'involuntary commitments' to mental health facilities which are done by taking

18  individuals into custody, including being handcuffed, and held without option to

19  leave inside a locked County hospital unit, and in the case of Plaintiff MICHAEL

20  SLAWSON, violated his civil rights by performing said 'involuntary commitment'

6

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1   without reasonable or articulable facts to suspect he was mental illness, nor that he

2   posed any immediate danger to anybody beyond that of the legal rights of the

3   normal population, without reasonable suspicion that a crime has or was likely to

4   occur, without probable cause, and without a warrant for arrest.

5       6. Defendants LAMONT DOBBINS, CINDY SELANDER, and DEREK

6   SCHARLIN made no reasonable or evident attempts to ascertain and document the

7   mental clarity and coherency of Slawson, as if they had done so they should have

8   determined that Slawson does not suffer from 'mental illness' since no signs or

9   symptoms of mental illness or disorder were present.

10      7. Defendant DEREK SCHARLIN fabricated untrue details of an incident,

11  to falsely report that the plaintiff engaged in fighting when the plaintiff was

12  assaulted and battered in Culver City in February of 2019, and these false

13  statements by DEREK SCHARLIN defamed the plaintiff at the time of the 5150

14  arrest, during the false imprisonment, and in court hearings for the writ of habeas

15  corpus and the civil restraining orders initiated by DEREK SCHARLIN of the

16  CULVER CITY POLICE DEPARTMNET, resulting in the plaintiff's loss of

17  liberty, right to keep and bear arms, reputation, and wellbeing. Defendant DEREK

18  SCHARLIN egregiously, intentionally, and maliciously misrepresented the

19  incident, in which the plaintiff did not commit any crime and in fact was the victim

20  of assault, battery, and assault likely to commit great bodily injury, and DEREK

7

1   SCHARLIN went on to bring retaliatory *criminal threats* charges against the

2   plaintiff.

3        8. The defendants abused 'mental health' laws with motivation to bring legal

4   action against the plaintiff, absent of any reasonable suspicion of crime or probable

5   cause to take legal action against him. The deprivation of due process of law

6   directly resulted in a misapplication of law when the plaintiff was denied writ of

7   habeas corpus release on 6/14/2019 in a Los Angeles County Superior Court

8   Mental Health Division hearing where he was still under direct custody of and

9   unable to leave the HARBOR-UCLA MEDICAL CENTER psychiatric unit, was

10  under the influences of numerous psychotropic medications involuntarily

11  administered to him by the psychiatric unit staff, had been assaulted and battered

12  and restrained at the hands and feet, and was suffering immense duress and fear of

13  personal liberty, mental anguish, and fear of prolonged imprisonment, forced

14  medication. and mental and physical manipulation and abuse. No choice or

15  opportunity for counsel selection or consulation, or discovery were made available

16  for the hearing.

17       9. Hours after the judge denied the writ of habeas corpus petition, the

18  psychiatric unit staff released the plaintiff and on the same day entered their

19  statement, by Dr. Michael Makhinson, that the plaintiff has no diagnosable mental

20  illness, and that 'continued involuntary confinement would penalize a man who

1    does not suffer from mental illness', and added that 'while Slawson has or may

2    have antisocial personality traits but not antisocial personality disorder which

3    requires more criteria such as harming animals or childhood diagnosis,  even if he

4    did have full-blown antisocial personality disorder, that is not considered a real

5    mental disorder or mental illness by the psychiatric field relied upon and legislated

6    to carry out 'mental health' functions under state law'.

7        10. During the writ of habeas corpus hearing performed earlier that day,

8    however, when the judge asked Defendant EMILY PIK LAM NG if Slawson has a

9    mental illness, she replied 'we suspect or believe Slawson may have antisocial

10    personality disorder'. Honorable Judge Joseph J. Burghardt 'denied' the writ, and

11    such denial has been interpreted, wrongfully, to constitute a lifetime ban to own

12    firearms based on an adjudication of mental illness [18 U.S.C. § 922(g)(4)], while

13    antisocial personality disorder, even if Slawson had it, is not a mental illness. Dr.

14    EMILY PIK LAM NG directly caused Slawson to suffer not only further

15    imprisonment due to this, but also the lifetime ban on firearms.

16        11. The negligence and misleading information testified by Defendant

17    EMILY PIK LAM NG in the writ of habeas corpus hearing proximately caused the

18    deprivation of Plaintiff MICHAEL A. SLAWSON's constitutional rights, as did

19    the falsification of facts by Defendant DEREK SCHARLIN regarding an incident

20    where Slawson was assaulted and battered in Culver City in February of 2019, and

1   due to the false information provided by Defendant LAMONT DOBBINS on the

2   5150 WIC seizure (under guise of mental evaluation) incident report, and the

3   communications from DEREK SCHARLIN of the CULVER CITY POLICE

4   DEPARTMENT to CINDY SELANDER of the LOS ANGELES COUNTY

5   SHERIFF's DEPARTMENT, to the extent and by details to be discovered in this

6   action, amongst other defaming information used by the defendants to deprive

7   Slawson of his civil rights.

8       12. The effects of relief by writ of mandamus, being abolished through the

9   Federal Civil Rules of Procedure, rule 71(b), may still be achieved through other

10   means – therefore this complaint asks for injunctive relief to correct the improper

11   entering of records pertaining to the writ of habeas corpus hearing and the unlawful

12   5150 WIC detention.

13       13. Plaintiff MICHAEL A. SLAWSON seeks compensatory and punitive

14   damages for the infringing acts of the defendants (which were reckless and

15   criminally indifferent as to the constitutional rights of Slawson), as well as orders

16   and equitable relief to restore his constitutional rights which are now deprived. The

17   defendants, as initiated by DEREK SCHARLIN of the CULVER CITY POLICE

18   DEPARTMENT, used oppressive tactics to build multiple civil, mental health, and

19   criminal court actions against Slawson, all based upon false statements, each which

20   alone are legally insufficient to prosecute, oppress, or confine Slawson, and

1  infringe upon the plaintiff's rights, but also were brought by DEREK SCHARLIN

2  and LASD Deputies CINDY SEANDER and LAMONT DOBBINS in succession

3  and in high quantity as to further obstruct the ability for the plaintiff or the courts

4  to fairly adjudicate each; the deprivation of rights which were caused by the

5  defendants were accomplished by, and did result in, lack of adjudication by not

6  providing proper legal choice or access to counsel, discovery, and many other

7  fundamental procedural rules and procedures of the court.

8      14. The deprivations of the plaintiff's first, second, fourth, sixth, eight, and

9  fourteenth amendments were committed by the defendants' agencies through their

10  agents without proper supervision protecting the civil (constitutional) rights of the

11  people subject to their authority executed under color of state law, and with tacit

12  authorization from the customs and policies of the agencies. Isolation of the

13  plaintiff in the COUNTY OF LOS ANGELES hospital (HARBOR-UCLA

14  MEDICAL CENTER) was a usual course of action by the defendants used upon

15  those arrested and involuntarily committed by law enforcement or county mental

16  health professionals upon request by law enforcement, and the defendants' policies

17  and training permit such actions to be performed by officers and clinicians without

18  supervisory restraint preventing or safeguarding against the clear potential for the

19  constitutional violation of unlawful seizure to occur.

20

11

<u>COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)</u>

## **Summary of Events**

15. On June 6, 2019 at, or near 7:30 AM , Plaintiff MICHAEL A.

SLAWSON was at his home in Rolling Hills Estates, a city within Los Angeles

County, when uniformed and plain-clothed LASD Deputies (Defendants

LAMONT DOBBINS and CINDY SELANDER), and ERIC ARIMOTO,  arrived

and entered the driveway of the home, on foot, then approached and made contact

with the Mother of Plaintiff MICHAEL SLAWSON at the front door, who (upon

request) allowed Officers to enter the home, and Deputies LAMONT DOBBINS

and CINDY SELANDER, along with an unknown female uniformed Deputy and

ERIC ARIMOTO, came into contact with Plaintiff MICHAEL SLAWSON in the

hallway leading to his bedroom, immediately upon sight placed Slawson in

handcuffs with his hands behind his back, escorted and placed him, handcuffed,

into their police vehicle and transported him to the Lomita Sheriff's Station where

he was then transferred into an ambulance and taken to the HARBOR-UCLA

MEDICAL CENTER Psychiatric Hospital, under the guise of California Welfare

and Institutions Code (WIC) section 5150 which permits individuals to be taken

into custody for observation by mental health professionals under the condition

(with probable cause) that the person, as a result of a mental illness, is a danger to

themselves, a danger to others, or is gravely disabled.

<u>COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)</u>

1  16. Slawson did not, however, exhibit, possess, present or display any of

2 these conditions, which are mandatory and necessary factors for Law Enforcement

3 to conduct such a detainment, taking into custody, and involuntary confinement or

4 imprisonment in a psychiatric hospital.

5  17. The Defendants performed this detainment and transfer to the medical

6 psychiatric unit, which functions as a jail or prison (people referred to as 'patients'

7 are placed there, involuntarily held, and are not free to leave until released by

8 Doctors), in retaliation against Slawson and with intent to deprive Slawson of

9 constitutionally protected rights, and used false statements and provocation to

10 fulfill the acts. The defendants made Slawson, a normal healthy man, lay on a

11 stretcher in the back of the ambulance, and ride in a wheelchair once arrived at

12 Harbor-UCLA Medical Center, which were ridiculous and humiliating procedures

13 to do to a person with no physical ailments and to which such actions are being

14 forced under the color of law, by force – denial at any step would result in

15 additional force being applied beyond handcuffs, up to and including use of lethal

16 force by armed officers against Slawson.

17  18. Both conditions for a lawful apprehension under Cal. Pen Code Section

18 5150 of the Welfare and Institutions Code, first that the person in question must be

19 a danger to themselves, others, or gravely disabled, and second that the first

20 condition must be due to mental health disorder, were not satisfied as applied to the

1    Plaintiff, MICHAEL A. SLAWSON, by the defendants. Probable cause was not

2    established and was actually absent in both conditions – Slawson had no history

3    and no conditions or behaviors present at time of his apprehension lending to

4    specific, articulable facts for the Defendants to reasonably suspect he was a danger

5    to others, danger to himself, or gravely disabled, as these terms were intended to be

6    used in reference to said legislation, and furthermore, Slawson had no history and

7    no conditions or behaviors present at time of his apprehension lending to specific,

8    articulable facts for the Defendants to reasonably suspect he had a mental health

9    disorder. The purported justifications presented by the Defendants, in fact, were

10   based upon patently untrue accounts of past incidents, acquired by insufficient

11   means, presented in false context as to attempt to distort perception of Slawson's

12   behavior and mental state to appear to fit the provisions of mental health detention

13   laws and imprison him.

14        19. HARBOR-UCLA MEDICAL CENTER is the hospital where Slawson

15   was held. It is in the COUNTY OF LOS ANGELES, in the area of the City of

16   Torrance, and is a county-government owned and operated hospital. Slawson was

17   forcefully and involuntarily given harmful psychoactive medications, denied basic

18   human utilities such as a toilet and sink, interrogated, tested and subjected to

19   personally invasive procedures and oppressive, embarrassing discourse, and was in

20   one incident held down by multiple staff members, strapped down to a table with

1   restraints, physically prevented from moving his arms or legs for approximately an

2   hour and a half, according to medical report documentation, in a terrifying,

3   dehumanizing, and psychologically tormenting position on his back, alone in a

4   secluded room with no information regarding the duration of the restraint and no

5   opportunity to communicate with any staff or others, and injected by needle into

6   his flesh as psychoactive drugs were deposited into his body against his will.

7   Immediately prior to the staff members entering and pushing Slawson down to the

8   table to be strapped down, a large group of staff was gathered in front of the cell

9   laughing and ridiculing Slawson, and no attempts were made by the employees to

10   de-escalate or provide access to a restroom, as Slawson was requesting. The

11   placement in four-point restraints was done to punish, humiliate, and force

12   Slawson into unlawful submission and acceptance of denial of basic human rights

13   and the unjust, unethical, oppressive control of the psychiatric unit staff, which

14   comprised of doctors, nurses, clinicians, LASD Security Officers, and others.

15   20. Once restrained and unable to move or control movement of his limbs or

16   body, and after an extended period of time, one staff member entered the small

17   room where Slawson was restrained and asked him questions, which Slawson

18   knew were questions to which his answers would determine if the staff would

19   release him from the tormenting position, and that his answers – if undesirable to

1    staff – would continue his pain and suffering by being restrained and trapped on

2    the table.

3        21. In extreme duress and anguish, Slawson advised he will behave and

4    follow all orders, hoping these words would cause the staff to release him from the

5    restrained position, although Slawson still knew he had not committed any act or

6    indication that such a restraint was necessary. Slawson did not assault or threaten

7    to assault any staff members or pose any reasonable threat to the safety of staff or

8    other inmates/ 'patients'. Slawson was ignored by staff while locked inside the

9    small room, where he was initially placed upon admission to the psychiatric

10   hospital, when he requested to use the restroom to defecate which caused him to

11   attempt to attract attention of staff by loudly knocking on the cell door, and

12   verbally demanding he be allowed to use a toilet. Slawson was shocked, confused,

13   and terrified as to why police took him from his home and locked him in a small

14   room in a psychiatric hospital, and that he was being denied basic human rights

15   such as a toilet, falsely under the guise of providing medical treatment to a person.

16   This absurd turn of events caused intense fear, torment, mental pain and suffering,

17   anguish and panic. The actions of the staff members were done with a lack of

18   effort for fairness or diligence in duty, with no attempt to de-escalate the situation

19   prior to restraining Slawson and were provoking towards Slawson.

1    22. As a result of being restrained at the hands and feet, on his back on a

2    table for one and a half hours, Slawson felt extreme terror and anguish and still

3    experiences severely detrimental and tormenting psychological after-effects from

4    being violated and restrained in such a heinous and unjust manner. Slawson feels

5    psychological anxiety and painful memories, which translate to physical suffering,

6    as a result of the staff failing to attempt to de-escalate the situation and instead

7    place him in total body restraint, when staff had a duty to allow Slawson to use a

8    restroom as was his right to do so.

9    23. Plaintiff MICHAEL A. SLAWSON was held involuntarily, against his

10   will and involuntarily medicated, and under duress at the HARBOR-UCLA

11   MEDICAL CENTER Psychiatric Unit for approximately nine days, from June 6,

12   2019 through June 14, 2019.

13   24. The acts committed by the defendants caused and do cause severe

14   emotional pain and suffering, deprivation of civil rights, and unjustly imposed

15   specific prohibiting laws so that plaintiff MICHAEL SLAWSON may not own or

16   possess firearms for the remainder of his life, even though doctors conclusively

17   determined he does not suffer from any diagnosable mental illness or condition.

18   This prohibition is a result of a misinterpretation of Federal law [18 U.S.C.

19   922(g)(4)] which states persons who have been adjudicated mentally defective or

20   committed to a mental health institution are prohibited from possessing firearms

1  for their entire life following the event. This prohibition has improperly been

2  applied to Slawson, since law states the involuntary commitment cannot be for

3  observation, and also an adjudication means due process of law has been given,

4  which is required before any person may be deprived of life, liberty, or property,

5  and which was not given to Slawson.

6      25. The defendants committed these acts without legal justification, in

7  harmony and unison with each other, in retaliation against Slawson, and in a

8  manner as to deprive Slawson of constitutionally protected rights. An incident

9  report on the 5150 seizure by LASD cites no facts justifying a detention and

10  involuntary imprisonment, and only vaguely describes the cause of such action

11  stating the initiation of the visit to plaintiff's home (and subsequent 5150

12  detainment) was 'per LASD CIB Detective "Seander". The incident report falsely

13  claims Slawson had been diagnosed with 'schizophrenia' and 'depression', when

14  (in reality) Slawson had never been diagnosed with a mental illness and did not

15  suffer from mental illness.

16      26. The Officer who completed the report (signed by Defendant LAMONT

17  DOBBINS) marked that Slawson was 'dirty' when they met him inside his home,

18  although Slawson has entirely good and satisfactory hygiene and grooming

19  behaviors (including showering daily, maintaining short and kempt hair, nails, and

20  facial hair, and regularly applying deodorant, wearing clean clothes, and

1  maintaining every standard of hygiene consistent with normally hygienic

2  individuals in middle to upper-class societies), and it was approximately 7:30AM,

3  in the summer season, when the officers came (unannounced) to Slawson's home,

4  a time of day in which any reasonable person would appear less presentable in

5  appearance (being inside their home shortly after waking up and getting out of bed

6  but before showering or dressing for the day) than at a later time in the day after

7  they have performed morning routines of showering, grooming, changing clothes,

8  etc.;

9      27. The officer who completed the 5150 incident report (document indicates

10  Defendant LAMONT DOBBINS) maliciously described Slawson's appearance as

11  'dirty' in an attempt to defame his personal character, cause undue embarrassment

12  to him, and contribute to the likelihood medical staff would accept him into the

13  psychiatric facility upon arrival and initial examination. They also described his

14  hair as 'matted' which is untrue as Slawson's hair was too short and wavy to

15  become matted. This erroneous description of his hair was also used for the

16  reasons stated above in which Officers erroneously described Slawson's

17  appearance as 'dirty'.

18      28. When Slawson later attempted to discover what the CIB Department is

19  within the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, conflicting

20  information was provided by Deputy LAMONT DOBBINS who stated CIB is the

1   'Central Intelligence Bureau', as compared to the information provided by a

2   lieutenant with the LASD Mental Evaluation Team who stated CIB no longer

3   existed in LASD, following "restructuring". It is unclear if this division (CIB)

4   exists, and if it was dismantled or renamed between the time Deputy LAMONT

5   DOBBINS wrote it on the 5150 incident report and the time when Slawson was

6   told by a Lieutenant in LASD's Mental Evaluation Time (approximately

7   September or October, 2019) that it no longer exists.

8       29. Through courtroom testimony provided by defendants it was discovered

9   that Defendant DEREK SCHARLIN, in his official capacity as a Police Officer

10  and detective with the CULVER CITY POLICE DEPARTMENT, contacted the

11  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT to initiate the detention

12  of Plaintiff MICHAEL A. SLAWSON. Scharlin contacted the Sheriff's

13  Department for the 5150, and stated that he decided to perform such action because

14  of the different incidents Slawson was allegedly involved in. As such, these

15  defendants completed the act of conspiring to deprive plaintiff of civil rights, in

16  violation of 42 U.S.C. §§ 1983 and 1985(2),(3).

17      30. Placing an individual under, effectively, arrest and imprisonment without

18  notice and, in the manner which plaintiff MICHAEL A. SLAWSON was subjected

19  to humiliating and tormenting conditions under custody of HARBOR-UCLA

20  MEDICAL CENTER, without probable cause or legal reason, is a severely

1   traumatic and harmful process to the plaintiff's physical and mental well-being,

2   and is a severe violation of a person's basic right to remain free from unreasonable

3   search or seizure. As such there is a strong motive, in the name of compensating

4   and protecting Slawson and the People of the State of California, to deliver justice

5   by entering judgments as requested in this action, against the defendants.

6       31. This action includes a request for injunctive relief regarding correcting

7   the legal issues surrounding Plaintiff MICHAEL SLAWSON's right of possessing

8   firearms. He is left in a position of denial to legal rights relating to self-defense of

9   one's person and property, as well as those of family or community members.

10  Plaintiff MICHAEL SLAWSON also suffers loss of ability to engage in lawful

11  hunting with the use of firearms as he has been a legally licensed and trained

12  hunter in the State of California.

13      32. The acts where plaintiff was detained, transported and imprisoned

14  substantiate the violation of constitutional rights, causing action for 42 U.S.C §

15  1983 in seeking civil action for deprivation of rights, and 42 U.S. C. § 1985 for the

16  concerted acts by defendants, which were carried out.

17      33. The California Department of Justice (DOJ) generally oversees and

18  controls the background checks performed when purchasing firearms in the State

19  of California, and maintains databases to monitor and determine those who are

20  restricted from owning or possessing firearms; given the improper 5150 WIC

1  detainment and subsequent 5250 WIC stay, Plaintiff MICHAEL SLAWSON has

2  been recorded and entered as a person prohibited from owning or possessing

3  firearms, although HARBOR-UCLA MEDICAL CENTER officials reported at

4  conclusion of plaintiff's stay of observation that he does not suffer from any

5  diagnosable mental illness. The California Department of Justice improperly

6  records and maintains that persons who have been held under 5250 WIC meet the

7  criteria as described in 18 U.S.C § 922(g)(4) where a person who has been

8  adjudicated as a mental defective or who has been committed to a mental

9  institution; such interpretation is incorrect in the case of plaintiff MICHAEL

10  SLAWSON given he was determined not to suffer from a mental illness, or be a

11  mental defective, and was not committed to a mental institution as 27 C.F.R. §

12  478.11 clarifies that 18 U.S.C. § 922(g)(4) does not prohibit a person from firearms

13  prohibition under this section when the person is under observation without a

14  diagnosis of mental illness or condition (as was the case with Plaintiff MICHAEL

15  SLAWSON).

16      34. The defendants conspired and carried out procedures to place plaintiff

17  into involuntary custody of the agencies and facilities of the defendants acting

18  under color of state law, and deprived plaintiff of right to personal liberty, and to

19  due process, and inflicted harm to his nervous system and personal wellbeing, and

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1   deprived plaintiff of constitutionally protected rights and privileges, all without

2   legal justification.

3

4                **JURISDICTION**

5      35. The causes of action breach rights and privileges protected by the United

6   States Constitution, and as such violate federal statutes enacted by United States

7   Congress in Title 42 of the United States Code. The acts of the defendants caused

8   actual controversy.

9      36. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

10   Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

11

12                **VENUE**

13      37. Each claim herein arises out of incidents which occurred in the

14   COUNTY OF LOS ANGELES and involves employees, agencies, and agents of

15   the COUNTY OF LOS ANGELES or the CITY OF CULVER CITY, which are all

16   located within the geographical area of the Central District of California in the

17   Western District.

18

19                **PARTIES**

20      Plaintiff:

1   MICHAEL A. SLAWSON, an individual residing in Los Angeles County,

2   California,

3   vs.

4        Defendants:

5   At all times herein mentioned the defendants were and are legal and political

6   entities, representatives, or employees established under the laws of the State of

7   California, or the Charter of the County of Los Angeles, or the Charter of the City

8   of Culver City, with all powers specified and necessarily implied by the

9   Constitution and laws of the State of California and exercised by a duly elected

10   Board of Supervisors or its agents and officers:

11   (1)        COUNTY OF LOS ANGELES, a public entity;

12   (2)        LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public

13            entity;

14   (3)        CULVER CITY POLICE DEPARTMENT, a public entity;

15   (4)        CITY OF CULVER CITY, a public entity;

16   (5)        LOS ANGELES COUNTY DEPARTMENT OF MENTAL

17            HEALTH, a public entity;

18   (6)        HARBOR-UCLA MEDICAL CENTER, a public entity;

19   (7)        DEREK SCHARLIN, individually and as a Police Officer of the

20            Culver City Police Department;

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1   (8)        LAMONT DOBBINS, individually and as a Deputy Sheriff of the Los

2              Angeles County Sheriff's Department;

3   (9)        CINDY SELANDER, individually and as a Deputy Sheriff of the Los

4              Angeles County Sheriff's Department;

5   (10)       MARK RIDLEY-THOMAS, individually and as a member of the Los

6              Angeles County Board of Supervisors;

7   (11)       EMILY PIK LAM NG, individually and as a Doctor of Harbor-UCLA

8              Medical Center

9   (12)       ERIC ARIMOTO, individually and as a Clinician of the Los Angeles

10             County Department of Mental Health;

11

12                              **INCORPORATION**

13        38. Paragraphs 1 through 37, above, are hereby repeated, realleged and

14   incorporated by reference in paragraphs 39 through 112 of this complaint.

15

16                          **FIRST CAUSE OF ACTION**

17                **Unlawful Seizure and False Imprisonment**

18                            **42 U.S.C. § 1983**

19                          (Against All Defendants)

25

39. Although California Welfare and Institution Code section 5150 permits peace officers to detain and confine an individual, involuntarily, to a mental health institution, the necessary elements to permit such action to be performed (without violating clearly established, protected rights) were not present in this incident. This detention, arrest, and imprisonment of Plaintiff MICHAEL A. SLAWSON under the authority of California Welfare and Institutions Code 5150 was based on underlying facts which were not only false and manufactured with malicious intent, but also were so lacking in probable cause that a reasonable Police Officer should know not to conduct such action.

40. While involuntarily held in the psychiatric hospital, Slawson was on one occasion assaulted and battered by multiple employees, including being physically held down to a table and having his wrists and ankles strapped to the bed-table, being injected with unknown psychoactive drugs through a hypodermic-needle, and left in a highly traumatic stress position for one and a half hours, unable to control his body or move, and with no information about how long would be left there.

41. Slawson was held from June 6th, 2019 to June 15th, 2019 against his will. During this time, he frequently and repeatedly insisted that he does not suffer from any mental illness and that staff has no right to keep him against his will. Slawson also conveyed to officers when initially detained that he suffers from no mental

1  illness. All requests to be released from the involuntary stay at HARBOR-UCLA

2  MEDICAL CENTER were denied by on-site doctors and staff. Prior to his

3  transport from the psychiatric unit to the Metropolitan Courthouse where the writ

4  of habeas corpus hearing was held, Dr. Michael Makhinson informed Slawson that

5  he would probably have an opportunity to 'escape' but that he should not because

6  then Dr. Makhinson would obtain a warrant for law enforcement to locate me and

7  place me into custody again. Slawson was released on June 14th after Dr.

8  Makhinson and other handling Staff at the hospital conclusively determined on

9  record that Slawson does not have any diagnosable mental illness or disorder.

10      42. The defendants infringed, by conspiring and fulfilling the conspired acts,

11  upon the plaintiff's *fourth amendment right to remain free from unreasonable*

12  *search and seizure* by depriving his personal freedom and liberty while confined in

13  the locked facility of HARBOR-UCLA MEDICAL CENTER of the COUNTY OF

14  LOS ANGELES; "Personal liberty is a fundamental interest, second only to life

15  itself, as an interest protected under both the California and United States

16  Constitutions." (*People v. Olivas (1976) 17 Cal. 3d 236, 251 [131 Cal. Rptr. 55,*

17  *551 P.2d 375])*; the cause of action which detained the plaintiff from his home

18  utilized infringement of his *first amendment right to free speech*, as the action was

19  claimed and pleaded to have been founded upon speech protected by such right to

20  free speech lawfully exercised by the plaintiff. The defendants caused deprivation

1  of the plaintiff's *second amendment right to keep and bear arms*, as the

2  Defendants' act of conspiring to and conducting a 5150 WIC detention, as intended

3  by them, caused (by legal technicality) prohibition from owning firearms in the

4  State of California.

5

## **SECOND CAUSE OF ACTION**

### **Retaliation and Conspiracy to Falsely Arrest**

### **42 U.S.C. § 1985(2),(3)**

(Against Defendants DEREK SCHARLIN, LAMONT DOBBINS, CINDY

SELANDER, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT,

COUNTY OF LOS ANGELES, CULVER CITY POLICE DEPARTMENT, CITY

OF CULVER CITY)

13  43. The cause and initiation of the 5150 detainment was determined from

14  information provided in sworn court testimony in a court hearing in the Superior

15  Court of California, Los Angeles County at a Gun Violence Restraining Order

16  hearing, requested by Detective Derek Scharlin of the Culver City Police

17  Department. In this petition to the court, Detective Derek Scharlin gave

18  contradictory and false information regarding an incident at a store (Martin. B

19  Retting) in Culver City in which Plaintiff Slawson was assaulted/battered by

20  multiple assailants employed and working at Martin B. Retting.

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

44. In this incident Slawson called 9-1-1 from his cellphone immediately following the attack, once recovered and able to function normally following multiple punches to the face and head, and two officers from the CULVER CITY POLICE DEPARTMENT responded to the scene. Slawson reported to Officers that the employees in the store punched him multiple times in head, in a completely unnecessary and violent manner. Slawson reported to police that he lost consciousness at one point during the assault and suffered visible swelling on the eyes and mouth, and a laceration inside the lip which was leaking blood. Slawson requested the Officers photograph and document the injuries- however Officers failed to do so. Detectives failed to investigate injuries throughout the investigation, as well. Culver City Police Department, including Detective DEREK SCHARLIN and Sgt. Jackson refused to provide the police report to Plaintiff Slawson, and would not advise who were listed as victims or suspects in the incident report(s).

45. Further court pleading filed by Detective DEREK SCHARLIN, petitioning the court for a restraining order barring Plaintiff Slawson from contacting or travelling to the Culver City Police Department, again give false claims by Detective DEREK SCHARLIN that Plaintiff Slawson assaulted two male and one female employees in the store assault/battery incident. DEREK SCHARLIN fabricated details such as Slawson using closed fists to strike the

1  employees, with there being no facts or evidence supporting Slawson engaging in

2  combat, or fighting, other than possible (but unknown) statements made by the

3  employees of Martin B. Retting, who committed the assaults and batteries.

4      46. The incident is on video and shows that Slawson did not throw or

5  administer any punches, kicks, or offensive tactics. Slawson is considerably trained

6  in multiple fighting disciplines, and described to both Officers on scene and

7  Detectives at later investigation that he purposely chose not to punch or fight back,

8  but only attempted to evade the fight and wait until the assailants stopped punching

9  and attacking him. Slawson described, and video shows, that he had his small dog

10  (approximately 6-pound small docile dog) which he did not want to get injured

11  during the viscous attack by Martin B. Retting store employees Lyzander

12  Alejandrino and Morgan Drew. Video also shows female employee (Ingrid 'Doe')

13  joining in the assault/battery afterwards by slapping / striking Slawson in the back

14  of the head, after employees Alejandrino and Morgan Drew punched Slawson

15  multiple times in the face and head.

16      47. DEREK SCHARLIN has consistently displayed malicious and

17  unprofessional behavior, appearing in a court hearing on 1/14/2020, attempting to

18  intimidate Slawson by loudly announcing, multiple times, in the courtroom before

19  in session that he was going 'upstairs to file this' at a pretrial hearing for the

20  frivolous criminal threats charge he filed against Slawson, insinuating that he was

1   going to continue filing more frivolous actions against Slawson in his all-out

2   assault on Slawson's personal freedom. DEREK SCHARLIN has and continues to

3   act, under color of authority, in a personal, vendetta-like fashion, in a deranged

4   manner, reckless to the constitutional rights of Slawson, in an effort to harass and

5   inflict as much harm as possible against Slawson through court and police

6   processes, and in a spiteful mission to satisfy the personal ego and feelings of

7   dominance and superiority of DEREK SCHARLIN over those who would

8   challenge his self-perceived absolute moral high-ground and status as a peace

9   officer. Such conduct and display of low moral values, competency, and discretion

10   in applying law raise serious concern as to the eligibility of DEREK SCHARLIN

11   to serve the public as a peace officer.

12   48. DEREK SCHARLIN acted with intent to unjustly and unfairly protect

13   the interests of those who committed criminal violations of California Penal Code

14   Sections 240, 242, and 245 (assault, battery, and assault likely to commit great

15   bodily injury), as they (Martin B. Retting and its employees) were or were part of a

16   well-known store and company in the CITY OF CULVER CITY, with close

17   relations to the city, and as Slawson was not a resident of Culver City.

18   49. DEREK SCHARLIN unlawfully recorded conversations between him

19   and Slawson without advising Slawson of such, in which SCHARLIN violated

20   California two-party consent laws for recording confidential conversations by not

1  informing Slawson he was recording the conversations, and he then nefariously

2  and maliciously copied those conversations to a CD, and played those audio

3  recordings in court in the gun violence restraining order hearing which he initiated

4  against Slawson.

5      50. Scharlin owned and operated a gym (PowerHouse Gym) in Chatsworth,

6  CA, and was documented by a member's personal video in January of 2016 as

7  reportedly seeming to want to fight a customer, and is seen acting in an

8  unprofessional, aggressive and hostile manner, including calling a member 'stupid'

9  and an 'idiot' and replying to questions with non-answers, being particularly

10  obstinate, passive-aggressive, and intentionally aggravating by halting any

11  resolution to the issues at-hand, in the same way as he did in the phone calls from

12  Slawson to DEREK SCHARLIN as the Detective at Culver City PD investigating

13  the assault and battery by Martin B. Retting Employees Lyzander Alejandrino and

14  Morgan Drew against Slawson. An additional internet user commented on the

15  video that he was also a member of the gym and also had problems with Scharlin

16  'getting in front of his face'.

17      51. Powerhouse Gym's internet Yelp page has numerous reviews

18  specifically addressing the inappropriate, hostile behavior of DEREK SCHARLIN,

19  including members feeling physically intimated and threatened by him, describing

1  him as condescending, insulting, having a disgusting demeanor, acting like he is a

2  drill sergeant, and yelling and screaming at members.

3

## THIRD CAUSE OF ACTION

### Deprivation of Second Amendment Rights

### 42 U.S.C. §§ 1983, 1985(2)(3)

(Against All Defendants)

8  52. Slawson was shocked and agitated because these offences were not

9  pursued justly by the Culver City Police Department or the District Attorney's

10  Office, and proceeded to contact the detectives and request information about why

11  they did not perform any necessary police functions other than contacting LAFD

12  on scene for assistance. Slawson made attempts to seek police services, through the

13  proper chains of command, but discovered during the course of these

14  communications that the Detectives (including DEREK SCHARLIN and Sgt.

15  Jackson) were consistently argumentative, intentionally agitating, and clearly

16  withholding information important to Slawson- a victim of the attack, and

17  generally obstructing justice by refusing to provide the police reports of the

18  incident. Formal complaints have been initiated through the CULVER CITY

19  POLICE DEPARMENT and LASD, however complaints have consistently been

20  shown in recent times to offer a mere bypass of liability and opportunity to claim

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1   all behaviors by officers are 'not in violation of policy or law', although pure

2   constitutional violations are presented. LASD responded to a complaint, regarding

3   the 5150 arrest, claiming a review was conducted and no wrongdoing was found

4   on behalf of LASD employees. CULVER CITY POLICE DEPARTMENT has not

5   conducted follow up contact to any of three formal complaints, submitted

6   following the events in 2019.

7       53. Plaintiff Slawson obtained the police report by Deputy Lamont Dobbins

8   for the 5150 detainment in June of 2019, and the report details, in accordance with

9   testimony provided by Deputy LAMONT DOBBINS in the gun violence

10   restraining order hearing, that Deputy Dobbins of LASD Mental Evaluation Team

11   (MET) and Deputy CINDY SELANDER, of a 'Central Intelligence Bureau (CIB)

12   of the LASD, initiated the 5150 detainment based on contact from Detective

13   DEREK SCHARLIN from the Culver City Police Department. The group-enacted

14   force and seizure effected by Defendants LAMONT DOBBINS, Detective

15   DEREK SCHARLIN, Deputy CINDY SELANDER, et. al, satisfy and constitute

16   Conspiracy to Infringe Constitution Rights, 42 U.S.C. § 1985, in accordance and

17   direct part in the actual deprivation of Plaintiff MICHAEL SLAWSON's 4th

18   amendment right, *to remain free in one's person, property, papers and effects, and*

19   *free from unreasonable search and seizure*, and 2nd amendment rights to *keep and*

20   *bear arms*, as the defendants committed the offenses against Slawson knowing

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1   doing so would by legal technicality prohibit Slawson from continuing to lawfully

2   own firearms, as a 5150 detainment and acceptance to a mental health hospital

3   triggers a 5 year prohibition in the State of California from owning, possessing, or

4   acquiring firearms, ammunition, or ammunition feeding devices, and a 5250 WIC

5   hold has imposed (in error) federal lifetime ban on firearms under 18 U.S.C. §

6   922(g)4.

7        54. Acts by defendants were, as indicated by the evidence and course of

8   events, carefully and purposely performed in order to deprive Plaintiff Slawson of

9   his right to possess firearms- once a 5150 detainment is performed in California

10  and a patient is admitted to facility for 72 hours, there is an automatic 5 year

11  prohibition from possessing firearms in California, and when held beyond 72 hours

12  and under the provisions of WIC 5250, there has been a procedural effect by ATF

13  or California DOJ to consider this to satisfy the Federal Ban on firearms to those

14  adjudicated to be mentally defective.

15       55. In actuality, the fact of being held beyond 72 hours and having the stay

16  sustained by a judge in the form of denying a writ of habeas corpus requesting

17  release from the facility was still, in Plaintiff Slawson's case, part of observation

18  by the Harbor-UCLA Medical Center and ultimately after nine total days, primary

19  handling Dr. Makhinson concluded that he and his colleagues have determined

20  Plaintiff Slawson does not suffer from any diagnosable mental illness. As such,

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1   any determination that Slawson should suffer the loss of right to own or possess

2   firearms per federal statute 922(g)4 would be infringing the rights of a person who

3   does not meet the definition of the code, in that he does not suffer from a mental

4   illness or condition, [27 C.F.R. § 478.11.]

5       56. In addition, no adjudication was afforded to Slawson throughout the

6   course of events, since the only court hearing available was a writ of habeas corpus

7   hearing conducted on June 14, 2019 (the ninth day involuntarily held at HARBOR-

8   UCLA MEDICAL CENTER), who did not contain any standard rules and

9   privileges of due process, including no right to research, attorney selection or self-

10  representation, and did deprive Slawson of liberty and property without due

11  process and as a result of the acts of the defendants.

12

13                    **FOURTH CAUSE OF ACTION**

14              **Defamation Intended to Deprive of Civil Rights**

15                   **42 U.S.C. §§ 1983, 1985(2),(3)**

16                        (Against All Defendants)

17      57. Throughout the course of events causing action in this lawsuit, the

18  defendants as described herein conspicuously used misleading, false, and

19  pejorative statements regarding Plaintiff Slawson.

1  58. During testimony given by LAMONT DOBBINS, a Deputy with the Los

2  Angeles County Sheriff's Department, stated Slawson's government record of

3  firearms purchases included 'assault rifles'. Assault rifle is a pejorative, loaded

4  term which carries a nefarious and negative impression that the firearm possesses

5  characteristics of war-use weapons. In fact, the weapons referenced were all legally

6  purchased in the State of California, where 'assault weapons' are illegal to

7  purchase, and were not assault weapons by California or federal definitions. All

8  weapons Slawson possessed were 'CA Compliant' which is a title labeled on

9  nearly all firearms of these types being sold, indicating they are sold from the

10  manufacturer with all California-compliant features. Deputy LAMONT

11  DOBBINS' use of this term was conspicuously misleading as to imply that

12  Slawson possessed firearms that were non-compliant or unusual to own, when in

13  reality these were common firearms owned by Californians and other Americans,

14  and serve every purpose from target shooting, hunting, home defense, and

15  collection/investment.

16  59. Upon Deputies LAMONT DOBBINS and CINDY SELANDER entering

17  Slawson's residence and handcuffing/taking him into their police vehicle against

18  his will, when Deputies first contacted Slawson in the hallway of his home,

19  connecting his bedroom to the main living room, Slawson was shocked to see

20  police in his home and, knowing he recently had tumultuous conversations and

1   negative encounters with Detective Derek Scharlin of the Culver City Police

2   Department, he asked in a mocking/intentionally impactful manner 'what's going

3   on are you guys terrorists or cops, why are you entering my home this way'. This

4   hyperbolic question from Slawson was then falsely presented by defendants to

5   seem like a confused genuine misunderstanding as to whether the Officers in

6   Slawson's home actually were police officers or were terrorists. The acts of

7   showing up in a person's home who has done nothing to provoke such appearance,

8   and then capturing and imprisoning that person with no justification is, in fact,

9   terrorizing. Slawson in fact had no confusion as to who these people in his home

10   were, as they were wearing uniforms and badges. Slawson is a former Deputy

11   Sheriff with the Los Angeles County Sheriff's Department and every reasonable

12   person understands uniformed Officers upon sight.

13       60. Slawson also spotted the Officers in his driveway prior to them

14   contacting him in the hallway inside the home, since his bedroom is at the front of

15   the home and he noticed them walking up his driveway and looked out the

16   window, visibly spotting a female uniformed Los Angeles County Deputy Sheriff.

17   On the 5150 WIC report from Deputy LAMONT DOBBINS, as well as in sworn

18   testimony given by Dr. NG at the writ of habeas corpus hearing, and in medical

19   psychiatric records of Slawson's involuntary stay of observation at HARBOR-

20   UCLA MEDICAL CENTER, it was listed that Slawson 'asked officers if they

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1  were terrorists' in a manner implying confusion by Slawson. This is erroneous and

2  this misleading, defaming conspicuous account of the incident caused damage to

3  Slawson's reputation and was one of the primary tortious acts committed against

4  Slawson leading to the causes of action in this lawsuit.

5       61. In written reporting by Dr. Ng of Harbor UCLA-Medical Center, Dr. Ng

6  wrote that Slawson claimed he 'fought these people' which implies Slawson

7  engaged in a fight with employees of Martin B. Retting store in Culver City. This

8  is a false claim since Slawson was assaulted and battered by employees, but

9  purposely did not return any strikes or offensive fighting tactics because he did not

10  want to be arrested, and because he had a small dog on a leash and did not want the

11  dog to be injured by the assailants. Slawson purposely and consciously chose not

12  to punch or kick the assailants, although capable and well trained in various

13  fighting disciplines including formal training through the Los Angeles County

14  Sheriff's Department Recruit Training Academy- where he successfully graduated

15  as a Deputy Sheriff in 2013. Slawson chose to allow the assailants to continue

16  knowing they would most likely stop before inflicting lethal injuries. Slawson also

17  knew from previous experience how poorly Law Enforcement Officers often

18  respond to incidents like these and simply choose to arrest everyone (or no one)

19  involved rather than determine who broke the law with assault or battery as

20  opposed to who were defending themselves or didn't engage in fighting. In this

1  incident, Slawson chose not to offensively strike or hit the assailants for these

2  reasons, yet the incident has been recalled as one where Slawson fought. This

3  unfairly and imprudently describes the incident and casts a negative light upon

4  Slawson as having chosen to act violently, when he actually did not. These

5  misleading statements and testimonies are a primary cause of the unlawful acts

6  against Slawson by defendants in this lawsuit, as it was a pretextual incident

7  related to the 5150 detainment and subsequent civil rights violations against

8  Slawson.

9    62. During testimony given by Deputy Lamont Dobbins in a firearms

10  restraining order initiated by Derek Scharlin against Slawson, Deputy Dobbins

11  when referencing a firearm owned by Slawson stated the bullets from that rifle

12  'could easily go right through his vest' (referring a bullet-resistant vest worn by

13  Police Officers). This statement flagrantly insinuates a negative or criminal aspect

14  to possession of firearms and ammunition when there is no indication or reason to

15  suspect Slawson possessed firearms for the use of harming Police Officers.

16    63. Deputy Lamont Dobbins never interviewed Slawson regarding why he

17  owned firearms, and there is no indication nor does Slawson harbor negative

18  violent views towards Law Enforcement, nor does he own firearms for illegal

19  reasons. He has been a firearms owner since he turned 18 in 2008, and since then

20  has collected, used firearms at the shooting ranges and at legal outdoor shooting

1   areas throughout southern California, was an armed and trained Deputy Sheriff

2   with the Los Angeles County Sheriff's Department where he resigned in good

3   standing in 2015, and also underwent California's required hunters education

4   course and obtained a hunting license in California. Deputy Dobbins' pejorative

5   use of describing ammunition Slawson possessed as being able to 'penetrate a vest'

6   are misleading and grossly paint Slawson's possession of legal firearms and

7   ammunition as criminal or nefarious, thus manufacturing ill intent with no

8   evidence or reason to suspect as much. These statements defamed Slawson and

9   contributed to the deprivation of his right to own firearms as that firearms

10   restraining order was granted and lasts one year in duration and is now a matter of

11   public record further defaming Slawson.

12

## FIFTH CAUSE OF ACTION

**Additional Violations of Plaintiff's Civil Rights Caused by Acts of Defendants**

**42 U.S.C. § 1983, 1985(2)(3)**

(Against All Defendants)

17   64.  Following the release from HARBOR-UCLA MEDICAL CENTER,

18   and after the gun violence restraining order was obtained by DEREK SCHARLIN

19   of the CULVER CITY POLICE DEPARTMENT, on August 7th, 2019 California

20   Department of Justice uniformed, armed officers entered the drive way of

1 Slawson's home where he lives with his parents. There were approximately 8

2 armed officers positioned at different areas on the property, ranging from the lawn

3 in front of the home and peeking into windows at the front of the home. There

4 were approximately eight unmarked vehicles with tinted windows which belonged

5 to the officers lined up and down Slawson's home street (Broken Bow Lane) which

6 is an extremely low-crime and quiet neighborhood in the Palos Verdes area

7 (Rolling Hills Estates). Officers stopped Slawson as he was leaving the home,

8 coinciding with the same time the officers approached the front door entrance,

9 which is inside an exterior gate from the driveway, and began asking Slawson

10 questions about the locations of firearms he previously purchased. Slawson

11 informed the officers all firearms had already been sold, as he signed under penalty

12 of perjury on a form received from Law Enforcement following his release from

13 detainment in the Harbor-UCLA Medical Center. Slawson advised where he sold

14 the firearms in question- he sold them to lawfully licensed firearms stores in Las

15 Vegas, NV and Kingman, AZ.

16      65. The officers asked for permission to search the home (we later learned

17 and confirmed that the CA DOJ lacks the ability to record firearms sold to dealers

18 outside of California although this is an entirely lawful and usual occurrence).

19 Slawson denied the Officers request politely, and the Officer proceeded to threaten

20 Slawson's freedom to deny the search and to leave freely, telling him they 'will put

1  the entire home on lockdown and nobody will be able to come or go). Slawson was

2  then the victim of infringement of 4th amendment right to freedom from

3  unreasonable search and seizure, against both Slawson and his two parents who

4  live at the home. A formal complaint was filed with the California DOJ Firearms

5  Unit regarding the Peace Officers' appearance that day; the CA DOJ replied

6  advising they reviewed the details of the incident and determined the officers

7  committed no wrongdoing with regard to threatening to 'put the entire home on

8  lockdown' based on Slawson's exercising his 4th amendment right in refusing to

9  give consent for Officers to search his parents' home.

10      66. This incident was directly the result of the actions committed against

11  Plaintiff Slawson by Defendants since CA DOJ officers are dispatched to homes of

12  people forbidden from possessing firearms and who have records of past firearms

13  purchases.

14

15                    **SIXTH CAUSE OF ACTION**

16  **Violation of Bodily Integrity, Oppression of the Mind, and Forced Medication**

17                 **42 U.S.C. § 1983, 1983(2),(3)**

18  (Against Defendants HARBOR-UCLA MEDICAL CENTER, COUNTY OF LOS

19        ANGELES, LOS ANGELES COUNTY DEPARTMENT OF MENTAL

20                     HEALTH)

67. Medical records from HARBOR-UCLA MEDICAL CENTER detail the drugs administered to Slawson while held against his will in the psychiatric hospital. Upon first arriving and being forcefully administered medication by syringe when Slawson did not readily accept the medication brought by medical staff to Slawson, he knew if he again refused any medication he would likely again be strapped down to the table and forcefully medicated without warning, as previously happened; these are considered involuntary as Slawson did not request any medication other than one occurrence of requesting medication for headache and trouble sleeping, for which he received an over-the-counter pain medication.

68. For this reason, Slawson complied and accepted all medications given to him following the initial involuntarily drug injection on June 6th, out of a reasonably clear and obvious fear that refusing or even questioning staff could again lead to another physical restraint in the tormenting 4-point (limbs) strapped bed. Over these 9 days, the following medications were (listed in hospital report) as administered to Slawson:

a. Clonazepam (psychoactive),

b. Haloperidol (psychoactive),

c. Lorazepam (psychoactive),

d. Olanzapine (psychoactive),

1    e. Haldol (psychoactive),

2    f. Ativan (psychoactive),

3    g. Diphenhyrdramine,

4    h. Divalproex sodium (psychoactive),

5    i. Ibuprofen,

6    and,

7    j. Magnesium hydroxide.

8      69. Many of these psychoactive drugs cause long term brain shrinking,

9 memory loss, difficulty learning, depression, addiction, suicidal thoughts and

10 behaviors, birth defects in offspring, and chemical imbalances in the brain.

11 Inducing medication against a person's will was and is an especially malicious and

12 gross violation of rights, as recognized by not *only* United States Constitutional

13 Law [4th Amendment] but also fundamental, basic human rights.

14      70. Slawson's writ of habeas corpus hearing on June 14th, 2019 was

15 conducted while Slawson was still under direct effects or after-effects of the

16 psychoactive drugs administered to him, which further violated his rights to due

17 process since he had no chance to prepare, and was likely mentally and

18 consciously altered as a result of the psychoactive drugs involuntarily administered

19 to him.

71. Personal liberty is a fundamental interest, second only to life itself, as an interest protected under both the California and United States Constitutions. (People v. Olivas (1976) 17 Cal. 3d 236, 251 [131 Cal. Rptr. 55, 551 P.2d 375].)

## SEVENTH CAUSE OF ACTION

**Restrictions of Liberty by Bodily Restraints and Unlawful Use of Force**

**42 U.S.C. § 1983, 1985(2)(3)**

(Against Defendants HARBOR-UCLA MEDICAL CENTER, COUNTY OF LOS ANGELES, MARK RIDLEY-THOMAS, EMILY PIK LAM NG, LOS ANGELES COUNTY DEPARTENT OF MENTAL HEALTH)

72. On June 6th upon arrival at HARBOR UCLA MEDICAL CENTER, plaintiff was placed in a small, enclosed room with no sink or toilet and only a window on the metal door. When he requested to use the restroom, staff ignored his requests as though they could not hear him. When staff did respond, they refused and instead opened the door and dropped pan to defecate in. The plaintiff refused on grounds of humiliation and knowledge that denial of basic utilities is a right. Following this Plaintiff still needed to defecate and demanded by shouting that personnel take him to the restroom as he was locked inside the room and had no way of getting out, leading to torment and physical and mental pain and suffering.

73. Staff proceeded to gather multiple employees together, including one or more LASD security officers, and physically assault / batter plaintiff by holding his arms and legs and placing him onto a table, affixing restraints to both wrists and ankles and affixing Plaintiff's body in a fixed position strapped to the table, unable to move. Records from HARBOR-UCLA Medical Center show Plaintiff was left in this restrained/fixed position unable move his arms or legs for 1.5 hours. This created severe mental, emotional, and physical pain, anxiety, and torment. Plaintiff believes there is cause to show this act by the defendants was done in retaliation for Plaintiff's language and tone in demanding staff allow him to use a restroom as is a basic human right.

74. Psychiatric hospitals are facilities where people who are there, in theory, to get help for a medical condition are subject to violence and trauma — in the form of involuntary medication, restraint and seclusion, disrespectful treatment, and, in the most egregious cases, as in this complaint, physical abuse. People remain unnecessarily institutionalized and segregated — in violation of their civil rights.

75. Personal liberty is a fundamental interest, second only to life itself, as an interest protected under both the California and United States Constitutions. (People v. Olivas (1976) 17 Cal. 3d 236, 251 [131 Cal. Rptr. 55, 551 P.2d 375].)

76. It is beyond dispute that a principal ingredient of personal liberty is "freedom from bodily restraint" (Meyer v. Nebraska (1923) 262 U.S. 390, 399 [67 L. Ed. 1042, 1045, 43 S. Ct. 625, 29 A.L.R. 1446])

## EIGHTH CAUSE OF ACTION

### Harassment, Stalking, and Malicious Prosecution

### 42 U.S.C. § 1983

(Against Defendants DEREK SCHARLIN, CULVER CITY POLICE DEPARTMENT, CITY OF CULCER CITY)

77. Defendant DEREK SCHARLIN of the CULVER CITY POLICE DEPARTMENT has abused authorities as a Peace Officer, with access to legal counsel, by seeking and obtaining frivolous legal actions, including initiating the arrest and imprisonment of Slawson under the guise of 5150 WIC, requesting and obtaining a Gun Violence Restraining Order against Plaintiff MICHAEL SLAWSON, a Civil Harassment Restraining Order against Plaintiff MICHAEL SLAWSON, and maliciously filing a Felony charge of criminal threats against Plaintiff MICHAEL SLAWSON. In each of these four actions, Defendant DEREK SCHARLIN lacked probable cause and legal justification, falsified facts both in written reports and in courtroom testimony, and did so with malicious intent to deprive Slawson of his right to own firearms, and to harass, annoy, and impede the

1  quality of life of Plaintiff MICHAEL SLAWSON. In the Civil Harassment

2  Restraining Order request, Defendant DEREK SCHARLIN with access to attorney

3  Joseph A. Gordon of Carpenter, Rothans & Dumont, LLP., sought to restrain

4  Plaintiff MICHAEL SLAWSON from contacting or travelling within 100 feet of

5  any employee of Culver City and from contacting the CULVER CITY POLICE

6  DEPARTMENT.

7       78. This order further infringes upon Plaintiff MICHAEL SLAWSON by

8  restricting his ability to travel or do business in Culver City, and since over 100

9  persons are listed as protected by the order, places an unreasonable restriction on

10  his life by having to worry about unintentionally violating this order, or by being

11  denied access to police services, if necessary. The petition for civil harassment

12  restraining order was requested and issued after the request for Gun Violence

13  Restraining order. The Civil Harassment Restraining Order was initially denied by

14  the initial Judge who quoted he was not willing to ban someone's access to an

15  entire police department; the order was later granted by Honorable Judge Joshua

16  Wayser who also granted the Gun Violence Restraining Order.

17       79. DEREK SCHARLIN initiated a felony criminal threats charge [Superior

18  Court of California, County of Los Angeles #SA101044 (2019)] against Slawson

19  in July of 2019, in retaliation for Slawson's denial to answer interrogatory

20  questions from Detective Scharlin regarding a phone call from Slawson to Martin

1   B. Retting in an attempt to ask management for names of the employees who

2   assaulted and battered Slawson, and to attempt to resolve the matter before a civil

3   suit was filed. In January of 2020, the charge was reduced to a misdemeanor by the

4   Superior Court of California, County of Los Angeles.

5     80. Detective Scharlin appeared at a pretrial hearing in an unprofessional

6   and intimidating manner as to inflict fear upon Slawson of further unlawful and

7   frivolous legal actions by DEREK SCHARLIN. DEREK SCHARLIN falsely

8   reported in a civil restraining order request that Slawson 'used violence against

9   those who denied him firearms', following up on DEREK SCHARLIN's fabricated

10   event that Slawson attempted to purchase a firearm or firearms while prohibited-

11   which has never happened. DEREK SCHARLIN then also fabricated a motive of

12   Slawson 'using violence towards those who would deny him purchase of firearms',

13   both falsely reporting that Slawson engaged in violence, and then falsely creating a

14   narrative that Slawson fought Martin B. Retting employees because they wouldn't

15   sell him a gun. DEREK SCHARLIN created a substantial false narrative and

16   obstruction of justice, with multiple events and aspects in order to both shield

17   himself and city business- Martin B. Retting- from liability, to defame Slawson,

18   and to gratify Scharlin's malicious ego and self- image.

19     81. DEREK SCHARLIN refused to provide names of person involved, or

20   the police report from the incident where Slawson was assaulted and battered by

1  Martin B. Retting employees Lyzander Alejandrino and Morgan Drew, and when

2  Slawson attempted to obtain those names since Culver City PD would not, DEREK

3  SCHARLIN retaliated and obstructed justice by placing a criminal felony charge

4  against Slawson, when no facts lending to probable cause for such a charge

5  existed- DEREK SCHARLIN circumvented probable cause requirements by not

6  placing Slawson into custody for the charge, but instead filing with the district

7  attorney's office as no probable cause declaration would need to be performed

8  without physical custody.

9

10  ## NINTH CAUSE OF ACTION

11  **Obstruction of Justice, Defamation, Retaliation and Cover Charges**

12  **42 U.S.C. § 1983, 1985(2),(3)**

13  (Against Defendants DEREK SCHARLIN, CULVER CITY POLICE

14  DEPARTMENT, CITY OF CULVER CITY)

15  82. Prior to the events listed in the above causes of action, in or near

16  February or March of 2019, Plaintiff Slawson was assaulted and battered by

17  employees of Martin B. Retting, a store selling hunting and firearms gear, in the

18  CITY OF CULVER CITY. Slawson called 9-1-1 immediately following the

19  incident where employees Lyzander Alejandrino and Morgan Drew both 'sucker

20  punched' him (that is, to punch someone with a fist in a surprising, unexpected,

1  and unwarranted manner) and proceeded to punch him with damaging, forceful

2  punches multiple times in the face and head while Slawson did not engage in

3  fighting and did not pose any threat which warranted use of force in the form of a

4  beating from the store employees. Officers who arrived on scene refused to

5  evaluate, document, photograph, or taken verbal statement on injuries suffered by

6  Slawson, which included lacerations outside and inside the mouth, swelling on the

7  eyes and eye socket area of his face, and suffered tooth, nose, eye, mouth, neck,

8  and head pain from the closed fist strikes from store employees Lyzander

9  Alejandrino and Morgan Drew (who also instigated the incident as they were

10  aggressive, argumentative, violent, and uninhibited in their demeanor and

11  language.

12      83. Detective Scharlin refused to provide the incident report to Slawson

13  upon request, and all reporting from Detective Scharlin regarding the incident

14  point to the propensity that the police report contained false information, such as

15  that Slawson punched the assailants Alejandrino and Morgan Drew, and that

16  Slawson spit on them. These are entirely untrue – Slawson purposely and

17  consciously decided not to punch or kick, although was his ability due to training,

18  experience, and general physical strength, and instead purposely chose to allow the

19  assailants to complete their punches knowing they would likely stop before any

20  severe damage was inflicted, in order to avoid arrest and to prevent his dog from

1   becoming injured. Slawson retained control of his dog's leash in his hand

2   throughout the entire period in which the employees were punching and attacking

3   Slawson.

4       84. Since DEREK SCHARLIN refused to provide the identities of the

5   assailants to Slawson so that he could sue, refused to provide a copy of the incident

6   report which Scharlin claimed had been submitted to the DA's office for

7   consideration of filing, and refused to advise who was listed as a suspect and

8   victim on the report, Slawson sought this information by himself by contacting

9   Martin B. Retting – and once that was done, DEREK SCHARLIN placed a 422(a)

10  Criminal Threats charge, a felony, against Slawson although no such criminal

11  violation had taken place. Scharlin's antics obstructed justice and further damaged

12  Slawson's ability to correct the injustices largely created by the CULVER CITY

13  POLICE DEPARTMENT, itself. DEREK SCHARLIN nefariously utilized his

14  police authorities to shield the actual criminals in the assault/battery incident, but

15  also 'cover his tracks' and prevent himself from being caught for doing so, by

16  restricting Slawson's ability to discover and expose Scharlin's devious tactics.

17      85. Even though the incident was recorded on video and reviewed by

18  Detective Scharlin, he still continued to falsify police reports, such as the Petition

19  for Civil Harassment Restraining Order in which Detective Scharlin falsely stated

20  that Slawson punched male employees and a female employee with a closed fist.

1   The clear misrepresentation and exceedingly baseless claims by Detective Scharlin

2   show a direct intent to defame Slawson's character, and to create an impression of

3   criminality or violent motive – neither of which Slawson possessed.

4        86. Defendant Scharlin acted in intentional malice towards Plaintiff Slawson

5   through misrepresentation of facts, in a negative context to harm Slawson's

6   reputation and ability to retain his 2nd amendment rights to keep and bear arms.

7   Scharlin further provided false reporting in the Civil Restraining Order by stating

8   Slawson 'illegally attempted to purchase firearms', referring to a purchase attempt

9   in Torrance, CA which the DOJ temporarily denied and placed on delay. This was

10  an entirely legal purchase at a licensed store, and Slawson was not prohibited from

11  owning, possessing, or purchasing firearms at that time. These facts should have

12  been entirely known to Scharlin as he is a trained peace officer – he instead used

13  this misreporting as part of his continuous, unyielding and vendetta-like pursuit of

14  harm under authority and color of law against Plaintiff Slawson.

15       87. Defendant Derek Scharlin's false reporting was used explicitly as

16  justification to obtain both the 5150 WIC detainment, as well as used as

17  justification for the Gun Violence Restraining Order hearing.

18       88. Defendant Scharlin's malicious misrepresentation of facts, claiming that

19  Slawson engaged in a fight- which he did not, were used by Defendant EMILY

20  PIK LAM NG at HARBOR-UCLA MEDICAL CENTER to justify detaining

1  Slawson in the psychiatric unit for evaluation, on the grounds that he was a danger

2  to others.

3      89. Further evidence showing Scharlin's intentional defamation against

4  Slawson by false statements and narrative attempting to persuade persons (by

5  public record and court pleadings) exists in showing that Lyzander Alejandrino had

6  at the time of his assault and battery of Slawson, and following that time,

7  numerous pictures and online representations of himself, including Facebook and

8  Instagram profiles publicly available for viewing, proclaiming himself to be a

9  'brawler', with numerous pictures of firearms and weaponry which would shock

10  the conscience of any reasonable, normal person, including wearing clothing

11  similar to hit-men, wielding dangerous and unusual knives, harpoons, taking

12  strange images while nude and holding firearms, referencing a fringe, violent film

13  and novel a 'A Clockwork Orange' (specifically referencing by posting in

14  Alejandrino's display the film's title and main character's portrait and quoting the

15  'ultra-violence' in the film wherein the characters engage in graphic acts of battery,

16  assault, beatings with fists and weapons, and forcible sexual rape. No arrest was

17  made of Lyzander Alejandrino at the store incident despite the fact that is was he

18  that was the first of him and Morgan Drew to commit battery by pushing/shoving,

19  and then punching Slawson, at which time Morgan Drew joined Alejandrino and

20  both of them proceeded to attack Slawson with closed-fist punches to the head and

1  face, and Slawson purposely did not engage in retaliatory or mutual combat,

2  although given the full-strength punches by the two assailants continuously

3  striking Slawson in the face, his vision was jarred, his consciousness faded, he

4  experienced extreme shock and feelings of 'fight or flight' terror and anguish,

5  extreme pain, and concerned that he would suffer death or great bodily injury, as

6  well as those for his small pet dog (a less than three year old 5 or 6 pound

7  chihuahua he was holding by leash).

8      90. The conduct and crimes of Lyzander Alejandrino and Morgan Drew

9  were so violent, unwarranted, and egregious that CULVER CITY POLICE

10  DEPARTMENT's refusal to arrest them upon request by Slawson at the scene,

11  even after taking Slawson's statements and viewing the video footage, demands

12  remedy against both the assailants (Morgan Drew and Lyzander Alejandrino) and

13  Defendants DEREK SCHARLIN, CULVER CITY POLICE DEPARTMENT, and

14  CITY OF CULVER CITY.

15      91. In the above listed applications, the defendants' acts violated Plaintiff

16  Slawson's bodily integrity and personal autonomy over his mind and body.

17      92. On 1/15/2020 Slawson filed a Removal of Criminal Prosecution to

18  United States District Court action in the United States District Court (2:20-CR-

19  00030-DSF), for the criminal charge of 422(a) Cal Pen Code case (SA101044)

20  initiated by DEREK SCHARLIN, and on 1/22/2020 Slawson's process service

1  company, Signal Attorney Service, attempted to serve DEREK SCHARLIN with a

2  copy of the action filed- however SCHARLIN and/or the CULVER CITY POLICE

3  DEPARTMENT refused to accept; Signal Attorney Service provided Slawson with

4  the following quote regarding their attempt:

5      *"...on the service for the Culver city police department my server went out*

6      *and asked for Derek Scharlin and they refused to call him to come and*

7      *accept. We called a number for the police department and spoke with Derek*

8      *over the phone and he stated he will come down. My server waited*

9      *and lieutenant Dunlap came down and stated they will not accept service*

10      *and Derek Scharlin will not be coming down. We were able to serve district*

11      *attorney's office but having issues with this service..."*

12  93. DEREK SCHARLIN had previously been served effectively at the same

13  location (CULVER CITY POLICE DEPARTMENT) by the same service

14  company, when Slawson had to file a response to a restraining order initiated by

15  Scharlin in Superior Court of California, County of Los Angeles.

16  94. At the time of Scharlin's refusal to accept documents properly being

17  served to him by Signal Attorney Service, Slawson was under restraint of the Civil

18  Harassment Restraining Order from DEREK SCHARLIN and was not legally

19  allowed to contact the CULVER CITY POLICE DEPARTMENT, so Scharlin's

20  refusal may have been an attempt to coerce or entrap Slawson into inadvertently

1  violating the terms of the frivolous restraining order and attempt to mail the

2  document to SCHARLIN following his refusal to be served by the process server.

3  Slawson did not, however, fall into the possible trap and instead requested and paid

4  extra for Signal Attorney Service to complete the service by mail.

5       95. Defendant DEREK SCHARLIN, in his official capacity as a California

6  P.O.S.T. (Peace Officer Standards and Training) certified peace officer, working as

7  a detective for the CULVER CITY POLICE DEPARTMENT, provided testimony

8  (by way of verbal witness testimony in a Restraining Order hearing against

9  Slawson) which was materially different than his written complaint, as his written

10  complaint presented to the court claimed Slawson punched and spit on the Martin

11  B. Retting store employees, while in spoken courtroom testimony he described the

12  incident in entirely different terms and stated that Alejandrino first punched

13  Slawson in the head, near or behind his ear, and that a 'melee' then took place.

14  Since in actuality it was only Alejandrino and Morgan Drew whom engaged in

15  fighting, and threw punches to Slawson's face and head without legal justification,

16  and Slawson did not punch or otherwise engage in fighting, it is evident Scharlin

17  felt a stronger necessity to not provide false statements as he did through his civil

18  complaint for the Gun Violence Restraining Order, and Civil Harassment

19  Restraining Order, however these materially different characterizations of the

20  incident, in the written form alleging that Slawson was a physical aggressor and

1 engaging in fighting, while in spoken testimony avoiding any mention of Slawson

2 engaging in fighting.

3    96. Slawson's phone call to Martin B. Retting, approximately six months

4 after the beating incident, was done by Slawson with concise and justified intent to

5 obtain the names of the employees who committed the acts, and to also speak to

6 the store ownership about monetary compensation as resolution for the violent,

7 illegal, unprovoked acts of their employees Lyzander Alejandrino and Morgan

8 Drew that left Slawson with mental suffering, anguish, and traumatic memories

9 and residual effects from their punches to his face and head. Slawson, in fact,

10 requested to speak to the ownership of the store when he called, and instead

11 employee Morgan Drew picked up the phone and advised that he is the manager.

12 He also picked up the phone and handled the call the second time that day, which

13 was a secondary follow up call requested by Morgan Drew – in the first call

14 Morgan Drew told Slawson that the ownership is not available and that Slawson

15 should call back later that day. These contextual realities show a clear lack of

16 intent to call to harass, annoy, or criminally threaten Morgan Drew, or Martin B.

17 Retting's staff by Slawson, and Defendant DEREK SCHARLIN's criminal

18 complaint represents the said phone call in bad faith as to bring further

19 prosecution, and defamation against Plaintiff MICHAEL A. SLAWSON, and

20 DEREK SCHARLIN did maliciously prosecute Slawson without probable cause

1   for an arrest or charge under Cal. Penal Code 422(a) as there was no threat to

2   commit a crime or any act to cause physical injury to Morgan Drew. A copy of the

3   criminal complaint as entered by DEREK SCHARLIN, or his counsel, is sought

4   and shall be requested as discovery in this complaint.

5

6                                   **DAMAGES**

7        97. The acts committed by the defendants caused upon the plaintiff

8   significant, lasting emotional harm and suffering, deprivation of civil rights and

9   constitutionally protected freedoms, exposed the plaintiff to additional undue

10  accusations and defamation, and unjustly imposed specific prohibiting laws so that

11  Plaintiff MICHAEL A. SLAWSON may not own or possess firearms for the

12  remainder of life, even though doctors conclusively determined he does not suffer

13  from any diagnosable mental illness or condition. This prohibition is a result of a

14  misinterpretation of Federal law [18 U.S.C. 922(g)4] which states persons who

15  have been adjudicated mentally defective or committed to a mental health

16  institution are prohibited from possessing firearms for their entire life following the

17  event. This prohibition has improperly been applied to Slawson since, law states

18  the involuntary commitment which would prohibit firearm ownership or

19  possession cannot be for observation, and also an adjudication implies due process

1  of law which is required before any person may be deprived of life, liberty, or

2  property (US Constitution, 14th Amendment).

3      98. Slawson is now inhibited in daily life by a justifiable and reasonable fear

4  of law enforcement, including general discomfort and heightened alertness in the

5  presence of police officers, and hesitation to communicate with or rely on police

6  officers in any professional capacity due to these civil rights violations and general

7  disregard for rule of law or compassion. Slawson also sustains fear and distrust

8  towards psychiatric doctors and professionals due to their unjustified treatment of

9  him.

10     99. By reason of the aforementioned acts of the defendants, and each of

11  them, plaintiff was injured in his health, strength and activity, sustained great

12  mental pain, suffering and shock to his nervous system, torment, anxiety, anguish,

13  humiliation, and severe emotional distress, all to their damage in an amount

14  according to proof at trial. Slawson desires to exercise his Second Amendment

15  rights to acquire, keep and bear firearms, but is being prevented from doing so by

16  the actions of the Defendants.

17     100. The defendants' acts were done and committed by each defendant

18  knowingly, deliberately and maliciously, with intent to oppress, injure, and harass

19  plaintiff, and with reckless indifference to the civil rights, personal security and

20  safety of this plaintiff; and by reason thereof, plaintiff prays for punitive and

1  exemplary damages from and against defendants and each of them, in an amount

2  according to proof at trial.

3      101. Plaintiff suffers severe emotional distress from the events, including

4  traumatic memories and feelings of being taken and physically/psychologically

5  abused, and also suffers severe stress from unclarity of when Los Angeles County

6  Sheriff's Department or other Law Enforcement Agencies may again take him into

7  custody, as before, considering LASD's already established record of doing so

8  without legal justification. Plaintiff Slawson also suffers a damaging burden of fear

9  and apprehension to express any feelings of victimization as a result of the acts of

10  the defendants, given that expressing such feelings of anxiety and other forms of

11  suffering could be misconstrued or maliciously used by defendants or other

12  officers or government psychiatric personnel to again detain Slawson, although he

13  suffers no mental delusions or unjustified fears.

14      102. The defendants have shown themselves to use their governmental

15  powers to capture, imprison, restrain, medicate, and control persons like Slawson,

16  and the mere exposing of these wrongdoings and deprivation of rights subjects the

17  victim to additional risk of retaliation and targeting by these individuals, acting

18  under authority of state law.

19      103. Plaintiff suffers legal prohibition to possess firearms as a result of

20  automatic imposition of restrictions based on a person having been committed to a

mental health facility, although this interpretation of said law is incorrect. A person who has no mental illness or condition cannot be denied the right to possess firearms on the grounds of state or federal regulations restricting the mentally ill from possessing firearms.

104. Plaintiff MICHAEL SLAWSON suffers direct mental pain and suffering because of being overpowered and placed in restraints by the defendants followed by being left in that position for around 1.5 hours. This violation of Slawson's bodily integrity caused severe mental pain and anguish, satisfying the definition of torture, and has left lasting traumatic memories of aguish, helplessness, and torture. The immediate rights to remain free in one's person (*fourt amendment*) was violated.

105. Plaintiff MICHAEL SLAWSON suffered and suffers a general deterioration in quality of life as a result of the totality of offenses committed against him.

## **Prayer for Relief**

106. Wherefore, plaintiff seeks judgment as follows:

**i.** Declaring pursuant to U.S.C. §§ 1983 and 1985(2),(3) that the acts, practices, and usages that the defendants engaged in, as set forth in aforementioned sections above, violate the legal and constitutional rights of the plaintiff.

1    **ii**. Entering judgment for compensatory and punitive damages, and

2    **iii**. entering judgment for compensatory and punitive damages against each

3    of the defendants in an amount sufficient to punish and to make an example of said

4    defendants, and to deter said defendants and others from engaging in similar

5    conduct, as follows:

6    (a) total monetary damages to be paid by defendants, an amount or

7    amounts to be determined upon verdict and as pursuant to Plaintiff's

8    calculation as provided, to Plaintiff MICHAEL A. SLAWSON.

9    (b) The recommended proportions, or percentages, of the total

10   monetary damages in section (a), above, to be paid from defendants to the

11   plaintiff are:

12   (1) 33.333333% - from: [COUNTY OF LOS ANGELES; LOS

13   ANGELES COUNTY SHERIFF'S DEPARTMENT;

14   LAMONT DOBBINS; CINDY SELANDER;],

15   (2) 33.333333% - from: [CULVER CITY POLICE

16   DEPARTMENT; CITY OF CULVER CITY; DEREK

17   SCHARLIN], and,

18   (3) 33.333333% - from: [HARBOR UCLA-MEDICAL

19   CENTER; COUNTY OF LOS ANGELES; MARK RIDLEY-

THOMAS; EMILY PIK LAM NG; LOS ANGELES COUNTY

DEPARTMENT OF MENTAL HEALTH; ERIC ARIMOTO].

**iv. Injunctive and Declaratory Relief**

(a)

107. The plaintiff is entitled to relief from prohibition on purchasing or

possessing firearms, ammunition, and ammunition feeding devices and seeks

Injunctive Order(s) to the California Department of Justice and others, as

necessary, assuring removal of related prohibitions to purchase/possess firearms in

the State of California, applicable to Federal systems, including the Armed

Prohibited Person's System, the Federal Bureau of Investigations - National Instant

Check System (FBI-NICS), and all other applicable systems or places of record

which are involved in the approval/denial of firearms purchases.

(b)

108. The court shall grant declaratory and injunctive relief, as effectively

appropriate, vacating and declaring that the writ of habeas corpus hearing was

performed without due process, was predicated on a false detainment and

imprisonment, and produced legal proceedings which violate the constitutional

rights of the plaintiff; this relief shall ensure that the plaintiff is not considered

adjudicated as a mental defective, as doctors concluded later that same day that

Slawson has no diagnosable mental illness, and the Judge denied the writ (citing

1    danger to others) in an erroneous, unconstitutional, and harmful manner, based

2    upon misleading information provided from Defendant Emily Pik Lam Ng, without

3    knowledge of what a mental illness is, and in a manner as to egregiously violate

4    the integrity and liberty of the plaintiff's wellbeing by falsely (by inadvertent

5    technicality of denying a writ for further mental assessment) labeling him mentally

6    defective. The California Courts, Judicial Branch of California holds that 'mental

7    health court' where Slawson's writ of habeas corpus hearing was held is one where

8    'participation in a mental health court is voluntary and the defendant must consent

9    to involvement in the program'. Slawson never consented to mental health

10    treatment, and never forfeited or waived any of his constitutional rights to be

11    judged on his mental status by a 'mental health court', nor does he do so now. His

12    writ for habeas corpus hearing, if it was even a legal hearing for a writ of habeas

13    corpus, was his only procedural means of leaving HARBOR-UCLA MEDICAL

14    CENTER (where he was falsely imprisoned) that was advised or offered him by

15    the HARBOR-UCLA MEDICAL CENTER staff, and was not a hearing in which a

16    legal judgement could be made determining his mental health status, as no due

17    process was presented allowing for discovery of the pleadings which the

18    prosecution launched against him and no representation or self-representation was

19    optional to Slawson. The hearing included false representations by Defendants

20    EMILY PIK LAM NG and the prosecuting attorney who defamed Slawson by

1   false information- such as that Slawson 'couldn't hold a job', which is and was

2   untrue, and resulted in false, damaging, defaming verbiage provided by the Judge

3   upon denying Slawson's immediate release from HARBOR-UCLA MEDICAL

4   CENTER custody, and such defaming verbiage and decision by the Judge was and

5   is used by the California DOJ and others to deprive Slawson of his right to own

6   firearms, amongst other damages caused by such inflammatory mistruth about

7   Slawson being a 'danger to others' – the judge verbally stated his decision was to

8   deny the writ because of 'danger to self, danger to others, gravely disabled', but the

9   court minute order only states 'danger to others'. Neither his verbal 'decision' nor

10  his written 'decision' made mention of a 'mental illness', which is the only ground

11  in which a judge could have jurisdiction to make such a judgement. The entire writ

12  hearing was one with no legal standing, no legally binding judgments, and shall be

13  determined entirely void as a result. Slawson was released the same day, after the

14  hearing, by HARBOR-UCLA MEDICAL CENTER who conclusively stated and

15  recorded that he does not have any diagnosable mental illness.

16      (c)

17      109. The California Department of Justice improperly records and maintains

18  that persons who have been held under Cal. Welfare and Institutions Code § 5250

19  meet the criteria as described in 18 U.S.C § 922(g)(4) where a person who has

20  been adjudicated as a mental defective or who has been committed to a mental

institution; such interpretation is incorrect in the case of plaintiff MICHAEL

SLAWSON given he was determined not to suffer from a mental illness, or be a

mental defective, and was not committee to a mental institution as 27 C.F.R. §

478.11 clarifies that 18 U.S.C. § 922(g)(4) does not prohibit a person from firearms

prohibition under this section when the person is under observation without a

diagnosis of mental illness or condition (as was the case with Plaintiff MICHAEL

SLAWSON).

(d)

110. Dissolution of Gun Violence Restraining Order [Superior Court of

California, County of Los Angeles, #19STRO05185 (2019)], as it is founded and

initiated by Defendants DEREK SCHARLIN, CULVER CITY POLICE

DEPARTMENT, CITY OF CULVER CITY,  and was granted based upon the

unlawful acts and practices of the defendants as described in this action, and does

result in unreasonable and unjustified constitutional infringements upon Plaintiff

MICHAEL A. SLAWSON

(e)

111. Dissolution of Civil Harassment Restraining Order [Superior Court of

California, County of Los Angeles, #19STRO06164 (2019)], as it is founded and

initiated by Defendants DEREK SCHARLIN, CULVER CITY POLICE

DEPARTMENT, CITY OF CULVER CITY and was granted based upon the

COMPLAINT – SLAWSON v. COUNTY OF LOS ANGELES, et al. – 42 U.S.C. §§ 1983, 1985(2),(3)

1  unlawful acts and practices of the defendants as described in this action, and does

2  result in unreasonable and unjustified constitutional infringements upon Plaintiff

3  MICHAEL A. SLAWSON.

4

5

6

7  Signed, under penalty of perjury that the foregoing is an accurate representation of

8  facts and beliefs, by Plaintiff:

9  _____                    2-11-20

10  MICHAEL A. SLAWSON, *Pro Se*                       Date